Aaron D. Radbil (*to seek admission pro hac vice*)
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
(512) 803-1578
(561) 961-5684 (Fax)
aradbil@gdrlawfirm.com

Counsel for Plaintiffs and the proposed classes

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janelle Cristales and Marianna Carvajal, *on behalf of themselves and others similarly situated*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>The Scion Group, LLC,<br><br>　　　　Defendant. | Civil Action No.:<br><br>Jury Trial Demanded |

**CLASS ACTION COMPLAINT**

**Nature of this Action**

1. Janelle Cristales and Marianna Carvajal ("Plaintiffs") bring this class action against The Scion Group, LLC ("Defendant"), under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227 by using an automatic telephone dialing system to deliver non-emergency text messages to telephone numbers assigned to a cellular telephone service without prior express consent.

3. Upon information and good faith belief, Defendant routinely violates 47 U.S.C. § 227(c)(5) by using an automatic telephone dialing system to deliver non-

emergency advertising and marketing text messages to telephone numbers assigned to a cellular telephone service without prior express written consent.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction under 47 U.S.C. §§ 227(b)(3), (c)(5), and 28 U.S.C. § 1331.

5. Venue is proper before this Court under 28 U.S.C. § 1391(b) as a significant portion of the transactions giving rise to this action occurred in Maricopa County, Arizona.

## Parties

6. Plaintiffs are natural persons who at all relevant times resided in Tempe, Arizona.

7. Defendant is a limited liability corporation based in Chicago, Illinois, which operates residential communities in 53 campus markets across the country, including in Tempe, Arizona.

## Factual Allegations

8. Ms. Cristales is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number— (909) 656-XXXX.

9. Ms. Carvajal is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number— (909) 957-XXXX.

10. At all relevant times, Plaintiffs resided in the Cottages of Tempe, a residential property owned by Defendant.

11. On March 6, 2019, Defendant, d/b/a UH Denver, and d/b/a the Cottages of Tempe, placed advertising and marketing text messages to Ms. Cristales's cellular telephone number.

12. Specifically, Ms. Cristales received a text message from short code 474-64 stating that the sender was "UH Denver," along with a text message from the "Cottages of Tempe."



*See* Exhibit A at 1.

13. On March 7, 2019, Defendant, d/b/a the Woods of San Marcos, and d/b/a the Cottages of Tempe, placed advertising and marketing text messages to Ms. Cristales's cellular telephone number.

14. Specifically, Ms. Cristales received a text message from the "Woods of San Marcos" along with a text message from the "Cottages of Tempe. *See id.* at 1-2.

15. Each of these four text messages included an opt-out provision, stating "[t]o opt out of future messages reply STOP" or "STOP2End." *Id.*

16. After receiving the fourth unsolicited text message from Defendant, Ms. Cristales responded "STOP." *Id.* at 2.

17. Defendant automatically responded to the "STOP" opt-out instruction, and stated that Ms. Cristales "[is] now opted out of the Woods of San Marcos TXT program. Reply 'STOPALL' to opt-out of ALL programs." *Id.* at 2.

18. The following day, on March 8, 2019, Defendant, d/b/a The Republic, and d/b/a the Cottages of Tempe, placed advertising and marketing text messages to Ms. Cristales's cellular telephone number.

19. Specifically, Ms. Cristales received a text message from "The Republic" along with a text message from the "Cottages of Tempe." *Id.* at 3.

20. On March 16, 2019, Ms. Cristales received two more text messages from Defendant, d/b/a the Cottages of Tempe, advertising leasing specials and reiterating that Ms. Cristales was opted into receiving these text messages. *Id.* at 4.

21. On March 20, 2019, Ms. Cristales received two more text messages from Defendant, d/b/a the Cottages of Tempe, advertising additional leasing specials and reiterating that Ms. Cristales was opted into receiving these text messages. *Id.* at 4.

22. That same day, Ms. Cristales responded "STOP." *Id.* at 5.

23. Defendant automatically responded to the "STOP" opt-out instruction, and stated that Ms. Cristales "[is] now opted out of The Cottages o… TXT program. Reply 'STOP EM' 2end EMERGENCY alerts, 'STOPALL' to opt-out of ALL programs." *Id.*

24. Ms. Cristales then responded "STOP ALL." *Id.* at 6.

25. Defendant automatically responded to the "STOP ALL" opt-out instruction, and stated that "[y]ou have been opted out of all subscription messages from 47464," which was the short code associated with all of Defendant's text messages. *Id.*

26. Despite these acknowledgements of Ms. Cristales's opt-out requests, Defendant continued to send advertising and marketing text messages to Ms. Cristales's cellular telephone number.

27. In fact, Defendant delivered three additional text messages to Ms. Cristales's cellular telephone number, related to the solicitation of new leases at The Cottages of Tempe. *Id.* at 7.

28. In total, Ms. Cristales received approximately 16 unsolicited text messages from Defendant, 13 of which were advertising and marketing messages, and three of which were acknowledgements of Ms. Cristales's attempts to opt out of receiving additional text message solicitations. *See generally id.*

29. At the same time, Ms. Carvajal received materially identical messages from Defendant d/b/a its various properties.

30. On March 6, 2019, Ms. Carvajal also received a text message from short code 474-64 stating that the sender was "UH Denver," along with a text message from the "Cottages of Tempe":



*See* Exhibit B at 1.

31. That same day, Ms. Carvajal responded "STOP." *Id.*

32. Defendant automatically responded to the "STOP" opt-out instruction, and stated that Ms. Carvajal "[is] now opted out of the UH Denver TXT program. Reply 'STOP EM' 2end EMERGENCY alerts. Msg&Data Rates May Apply." *Id.*

33. Defendant did not acknowledge her opt-out request with respect to the text message from the Cottages of Tempe. *See id.*

34. On March 7, 2019, Ms. Carvajal received a text message from the "Woods of San Marcos" along with a text message from the "Cottages of Tempe." *See id.* at 2.

35. Each of these four text messages included an opt-out provision, stating "[t]o opt out of future messages reply STOP" or "STOP2End." *Id.* at 1-2.

36. That same day, Ms. Carvajal responded "STOP." *Id.* at 2.

5

37. The following day, on March 8, 2019, Ms. Carvajal received a text message from "The Republic" along with a text message from the "Cottages of Tempe. *Id.* at 3.

38. That same day, Ms. Carvajal responded "STOP." *Id.*

39. Defendant automatically responded to the "STOP" opt-out instruction, and stated that Ms. Carvajal "[is] now opted out of the The Republic TXT program. Reply 'STOP EM' 2end EMERGENCY alerts, 'STOPALL' to opt-out of ALL programs. Msg&Data Rates May Apply." *Id.*

40. Defendant did not acknowledge her opt-out request with respect to the text message from the Cottages of Tempe. *See id.*

41. On March 16, 2019, Ms. Carvajal received two more text messages from the Cottages of Tempe, advertising leasing specials and reiterating that Ms. Carvajal was opted into receiving these text messages. *Id.* at 4.

42. Again, that same day, Ms. Carvajal responded "STOP." *Id.*

43. Defendant automatically responded to the "STOP" opt-out instruction, and stated that Ms. Carvajal "[is] now opted out of the The Cottages of Tempe TXT program. Reply 'STOP EM' 2end EMERGENCY alerts. Msg&Data Rates May Apply." *Id.*

44. Then, on March 20, 2019, Ms. Carvajal received two more text messages from the Cottages of Tempe, advertising leasing specials and once again reiterating that Ms. Carvajal was opted into receiving these text messages. *Id.* at 5.

45. Yet again, that same day, Ms. Carvajal responded "STOP." *Id.*

46. Defendant automatically responded to the "STOP" opt-out instruction, and stated that Ms. Carvajal "[is] now opted out of the The Cottages of Tempe TXT program. Reply 'STOP EM' 2end EMERGENCY alerts, 'STOPALL' to opt-out of ALL programs. Msg&Data Rates May Apply." *Id.*

47. In total, Ms. Carvajal received approximately 15 unsolicited text messages from Defendant, ten of which were advertising and marketing messages, and five of which were acknowledgements of Ms. Carvajal's attempts to opt out of receiving additional text message solicitations. *See generally id.*

48. Every text message sent to Plaintiffs from short code 474-64 was an advertising or marketing message sent on behalf of a property owned and operated by Defendant: UH Denver, Cottages of Tempe, The Republic, and Woods of San Marcos.[1]

49. Plaintiffs did not provide Defendant with prior express consent to send text messages to their cellular telephone numbers by using an automatic telephone dialing system.

50. Plaintiffs did not provide Defendant with prior express written consent to send text messages to their cellular telephone numbers by using an automatic telephone dialing system.

51. Ms. Cristales's mother and two of Plaintiffs' roommates also received similar—if not identical—text messages from Defendant, all without providing prior express consent, or prior express written consent.

52. Defendant's lease agreement for The Cottages of Tempe does not contain any clause requiring Plaintiffs' consent to receive text message solicitations.

53. Alternatively, Plaintiffs repeatedly revoked any consent to receive text messages from Defendant by following the opt-out procedures Defendant outlined through its text messages at issue.

54. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the text messages at issue, Defendant placed its text messages to Plaintiffs' cellular telephone numbers by using an automatic telephone dialing system.

55. Upon information and good faith belief, and in light of the frequency, number, nature, and character of the text messages at issue, Defendant placed its text messages to Plaintiffs' cellular telephone numbers by using "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if

---

[1] *See generally* http://thesciongroup.com/communities/ (last visited August 13, 2019).

7

the system must be turned on or triggered by a person)." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).

56. Upon information and good faith belief, Defendant placed its text messages to Plaintiffs' cellular telephone numbers for non-emergency purposes.

57. Upon information and good faith belief, Defendant placed its text messages to Plaintiffs' cellular telephone numbers voluntarily.

58. Upon information and good faith belief, Defendant placed its text messages to Plaintiffs' cellular telephone numbers under its own free will.

59. The purpose of the text messages that Defendant sent to Plaintiffs' cellular telephone numbers was to advertise and market Defendant's business.

60. Upon information and good faith belief, Defendant had knowledge that it was using an automatic telephone dialing system to place its text messages to Plaintiffs' cellular telephone numbers.

61. Plaintiffs suffered actual harm as a result Defendant's text messages in that they suffered an invasion of privacy, an intrusion into their lives, and a private nuisance.

62. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system to send text messages, absent prior express consent, to telephone numbers assigned to a cellular telephone service.

63. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an automatic telephone dialing system to send advertising and marketing text messages, absent prior written express consent, to telephone numbers assigned to a cellular telephone service.

**Class Action Allegations**

64. Plaintiffs bring this action under Federal Rule of Civil Procedure 23, and as representatives of the following classes:

> Telemarketing Class: All persons throughout the United States (1) to whom The Scion Group, LLC delivered, or caused to be delivered, an advertisement or telemarketing text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4)

8

within four years preceding the date of this complaint through the date of class certification.

Revocation Class: All persons throughout the United States (1) to whom The Scion Group, LLC delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system, (4) within four years preceding the date of this complaint through the date of class certification, (5) after the recipient texted "STOP" or "STOP ALL".

65. Excluded from the Classes are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

66. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

67. The exact number of the members of the Classes are unknown to Plaintiffs at this time, and can be determined only through appropriate discovery.

68. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

69. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone number, names, and addresses can be identified in business records maintained by Defendant and by third parties.

70. Plaintiffs' claims are typical of the claims of the members of the Classes.

71. As it did for all members of the Classes, Defendant used an automatic telephone dialing system to deliver text messages to Plaintiffs' cellular telephone numbers.

72. Plaintiffs' claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendant.

73. Plaintiffs' claims are based on the same theories as are the claims of the members of the Classes.

74. Plaintiffs suffered the same injuries as the members of the Classes.

75. Plaintiffs will fairly and adequately protect the interests of the members of the Classes.

76. Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

77. Plaintiffs will vigorously pursue the claims of the members of the Classes.

78. Plaintiffs have retained counsel experienced and competent in class action litigation.

79. Plaintiffs' counsel will vigorously pursue this matter.

80. Plaintiffs' counsel will assert, protect, and otherwise represent the members of the Classes.

81. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

82. Issues of law and fact common to all members of the Classes are:

   a. Defendant's conduct, pattern, and practice as it pertains to delivering text messages;
   b. Defendant's violations of the TCPA;
   c. Defendant's use of an automatic telephone dialing system as defined by the TCPA;
   d. Whether Defendant's text messages constitute advertising and marketing (Telemarketing Class);
   e. Defendants' practice of sending text messages to cellular telephone numbers after being instructed to stop doing so (Revocation Class); and
   f. The availability of statutory penalties.

83. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

84. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

85. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

86. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

87. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

88. The damages suffered by each individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

89. The pursuit of Plaintiffs' claims, and the claims of the members of Classes, in one forum will achieve efficiency and promote judicial economy.

90. There will be little difficulty in the management of this action as a class action.

91. Defendant has acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**On behalf of the Telemarketing Class**

92. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-91.

93. A text message is a "call" as defined by the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Arredondo v. Flexi Corp.*, No. 5:17-CV-4, 2017 WL 7796192, at *1 (S.D. Tex. Aug. 18, 2017) ("Making a call using an automatic telephone dialing system triggers responsibility under the TCPA regardless of whether the recipient answers. . . . A text message to a cellular telephone qualifies as a 'call' for such purposes.").

94. The TCPA at 47 U.S.C. § 227(b)(1)(A)(iii) makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ."

95. 47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's text messages to Plaintiffs are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

96. Further, 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

97. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by utilizing an automatic telephone dialing system to send an advertising and marketing text message to Plaintiffs' cellular telephone numbers without prior express consent or prior express written consent.

98. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2), Plaintiffs, and the members of the Telemarketing Class, are entitled to damages in an amount to be proven at trial.

## Count II
### Violation of 47 U.S.C. § 227(c)(5)
### On behalf of the Telemarketing Class

99. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-91.

100. A text message is a "call" as defined by the TCPA. *See Satterfield*, 569 F.3d at 954; *Arredondo*, 2017 WL 7796192, at *1 ("Making a call using an automatic telephone dialing system triggers responsibility under the TCPA regardless of whether the recipient answers. . . . A text message to a cellular telephone qualifies as a 'call' for such purposes.").

101. 47 U.S.C. §§ 227(c)(1)-(2) instructed the Federal Communications Commission ("FCC") to implement rules concerning the need to protect "residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," and to "prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers."

102. Among these regulations implemented by the FCC, 47 C.F.R. § 64.1200(a)(2) states, with respect to advertisement and telemarketing calls—of which Defendant's text messages to Plaintiffs are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party . . . ."

103. 47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or

prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

104. The TCPA at 47 U.S.C. § 227(c)(5) states that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . bring in an appropriate court of that State—(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or (C) both such actions."

105. Defendant violated 47 C.F.R. § 64.1200(a)(2) and, in turn, 47 U.S.C. § 227(c)(5), by utilizing an automatic telephone dialing system to send an advertising and marketing text message to Plaintiffs' cellular telephone numbers without prior express written consent.

106. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(a)(2), Plaintiffs, and the members of the Telemarketing Class, are entitled to damages in an amount to be proven at trial.

**Count III**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**On behalf of the Revocation Class**

107. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-91.

108. A text message is a "call" as defined by the TCPA. *See Satterfield*, 569 F.3d at 954; *Arredondo*, 2017 WL 7796192, at *1 ("Making a call using an automatic telephone dialing system triggers responsibility under the TCPA regardless of whether the recipient answers. . . . A text message to a cellular telephone qualifies as a 'call' for such purposes.").

109. The TCPA at 47 U.S.C. § 227(b)(1)(A)(iii) makes it "unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number

assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ."

110.  Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to send text messages to Plaintiffs' cellular telephone numbers after Plaintiffs revoked consent to receive text messages from Defendant.

111.  As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs, and the members of the Revocation Class, are entitled to damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a) Determining that this action is a proper class action;

b) Designating Plaintiffs as class representatives under Federal Rule of Civil Procedure 23;

c) Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing its violative behavior, including continuing to send text messages to Plaintiffs' cellular telephone numbers, and to the cellular telephone numbers of members of the Classes;

f) Awarding Plaintiffs and the members of the Classes damages under 47 U.S.C. § 227(b)(3)(B);

g) Awarding Plaintiffs and the members of the Classes treble damages under 47 U.S.C. § 227(b)(3)(C);

h) Awarding Plaintiffs and the members of the Telemarketing Class damages under 47 U.S.C. § 227(c)(5)(B);

i) Awarding Plaintiffs and the members of the Telemarketing Class treble damages under 47 U.S.C. § 227(c)(5)(C);

j) Awarding Plaintiffs and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

k) Awarding Plaintiffs and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

l) Awarding such other and further relief as the Court may deem just and proper.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury of any and all triable issues.

Date: August 13, 2019

*/s/ Aaron D. Radbil*
Aaron D. Radbil (*pro hac vice* application to be filed)
Greenwald Davidson Radbil PLLC

Counsel for Plaintiffs and the proposed classes