**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janelle Cristales, et al., | No. CV-19-04950-PHX-DGC |
| Plaintiffs, | **ORDER** |
| vs. | |
| The Scion Group LLC, | |
| Defendant. | |

This putative class action arises out of text messages received by Plaintiffs Janelle Cristales and Marianna Carvajal. Plaintiffs allege that Defendant The Scion Group, LLC, delivered these messages in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*. Scion moves to dismiss and compel arbitration. Doc. 19. The parties seek leave to file additional briefing. Docs. 22, 24. The motions are fully briefed, and no party requests oral argument. Docs. 20, 21, 23. For the following reasons, the Court will consider the additional briefing and grant Scion's motion to dismiss and compel arbitration.

**I.    Background.**

The facts are taken from the complaint and affidavits and exhibits filed in connection with the motion to dismiss. Docs. 1, 19. Plaintiffs each entered into a housing

1

agreement to reside at the Cottages of Tempe, a residential property owned by Scion. Doc. 1 at 1.[1] In the course of their tenancy, Plaintiffs signed up for and used Scion's property management software platform. Doc. 19-1 at 4. The platform was created by Entrata, Inc., and allowed Scion to administer its relationship with its applicants and residents. *Id.* at 3. The platform allows residents to apply for apartments and submit maintenance requests and questions online, and enables Scion to communicate relevant information to its residents. *Id.*

When Plaintiffs created their accounts to access the platform, they were required to check a box indicating they "agree to the terms and conditions" of using the platform. Doc. 19-2 at 3, 6. A link to the "Property Terms and Conditions" (hereafter, "Terms"), which is bolded and underlined, is placed at the bottom of the account creation page. *Id.* at 6. Plaintiffs also agreed to the Terms each time they paid rent using the platform. *Id.* at 3. Cristales used the platform to make 15 rent payments; Carvajal used it to make 23. Doc. 19-1 at 4-5. The Terms include an arbitration provision that applies to "[a]ny controversy or claim arising out of or relating to the use of the services on this site, the relationship resulting from the use of such services, or a breach of any duties hereunder." Doc. 19-2 at 21.

After signing up for the platform, Plaintiffs received marketing text messages from Scion that advertised leasing specials at the Cottages of Tempe and other Scion properties across the country. Doc. 1 at 2-6. Plaintiffs unsuccessfully attempted to opt-out of these messages by following the procedures outlined in Scion's messages. *Id.* Cristales received about 16 unsolicited texts – 13 marketing messages and 3 acknowledgements of her attempts to opt-out. *Id.* at 4. Carvajal received 10 advertising messages and 5 acknowledgements of her opt-out attempts. *Id.* at 6.

---

[1] Citations are to page numbers attached to the top of pages by the Court's electronic filing system.

Plaintiffs filed this putative class action on August 13, 2019, alleging violations of the TCPA, 47 U.S.C. §§ 227, *et seq.*  Doc. 1.

## II. Parties' Motions for Leave to File Additional Briefing.

The Court has reviewed Plaintiffs' surreply and Scion's lodged response.  Docs. 22-1, 25.  Plaintiffs argue that Scion raised new evidence and argument in its reply which "require clarification and response."  Doc. 22 at 1.  Plaintiffs highlight Scion's contention that the American Arbitration Association's ("AAA") Consumer Rules would apply to any arbitration, as opposed to the Commercial Rules addressed in its opening brief and the Terms.  Doc. 22 at 2; *see* Doc. 19 at 6.  Plaintiffs also contend that Scion "suggests for the first time through its reply brief an arbitral forum different than that found in the alleged contract at issue" and that Scion pay certain costs associated with arbitration.  Doc. 22 at 2; *see* Doc. 21 at 13.  The Court agrees that these are new and important issues, and will grant the parties' motions for leave to file additional briefing.

## III. Legal Standard.

The Federal Arbitration Act ("FAA") "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2).  Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Thus, "[a] party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue."  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

## IV. Discussion.

### A. Arbitrability.

Plaintiffs do not dispute that they agreed to Entrata's enrollment agreement which contained the arbitration clause, but argue that this does not obligate them to arbitrate their

claims because Scion is a nonsignatory to that agreement. Doc. 20 at 2. Plaintiffs also argue that the arbitration provision is substantively and procedurally unconscionable. *Id.* at 13.

Scion argues that "Plaintiffs clearly agreed to arbitrate their dispute with Scion, which has standing to compel arbitration as a third-party beneficiary or through equitable estoppel, even though Entrata is the only entity listed by name." Doc. 19 at 8. Scion cites cases recognizing that "nonsignatories can enforce arbitration agreements as third party beneficiaries." *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *Bultemeyer v. Sys. & Servs. Techs., Inc.*, No. CV12-0998-PHX-DGC, 2012 WL 4458138, at *6 (D. Ariz. Sept. 26, 2012).

The parties appear to agree that Utah law applies in determining whether Scion, a nonsignatory, can compel arbitration. *See* Docs. 20 at 7-9, 21 at 3; *see also* Doc. 19-2 at 22 (the agreement "shall be governed by and construed in accordance with the laws of the State of Utah"). Plaintiffs argue that Utah law only "recognizes third-party beneficiary status based on an arbitration provision as a corollary to the doctrine of equitable estoppel." Doc. 20 at 11. The Court does not agree. Although the doctrines are similar, they are not the same. In *Ellsworth v. American Arbitration Association*, 148 P.3d 983 (Utah 2006), the Utah Supreme Court noted that third-party beneficiary status can be used to invoke an arbitration provision, observing that it is "closely analogous" to estoppel. *Id.* at 989 n.11. The Utah court then cited *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003), which provides this helpful explanation of the difference between the doctrines:

> Under third party beneficiary theory, a court must look to the intentions of the parties at the time the contract was executed. Under the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed. Thus, the snapshot this Court examines under equitable estoppel is much later in time than the snapshot for third party beneficiary analysis.

*Id.* at 362 (citation omitted). In this case, the parties' focus on the intention of the parties at the time the contract was executed – the third-party beneficiary issue.

### B.   Third-Party Beneficiary.

Third-party beneficiaries are "persons who are recognized as having enforceable rights created in them by a contract to which they are not parties and for which they give no consideration." *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 684 (Utah 2001) (citations omitted). "The existence of third party beneficiary status is determined by examining a written contract." *Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002) (citation omitted). "For a third party to have enforceable rights under a contract, the intention of the contracting parties to confer a separate and distinct benefit upon the third party must be clear." *SME Indus.*, 28 P.3d at 684 (citations omitted); *see also Wagner*, 62 P.3d at 442. Thus, the question in this case is whether the Entrata agreement clearly reflects an intent to confer a "separate and distinct" benefit upon Scion. The Court concludes that it does.

The Terms make clear that Entrata is not the entity that operates the properties Plaintiffs were renting: "We are a third-party vendor, who is not the seller, lessor, or management company." Doc. 19-2 at 15. Instead, the Terms identify the "Property Client" as "[t]he legal entity that owns or manages the property displayed on the website." *Id.* at 10. In this case, that entity is Scion. The Terms makes clear that the platform Plaintiffs used numerous times is hosted and maintained "on behalf of" Scion. *Id.* at 10 (stating that Entrata is the "software company that hosts and maintains this website on behalf of a Property Client," Scion).

The Terms grant Scion authority to take various steps related to Plaintiffs' rental of their Scion residences. For example, Plaintiffs "authorize the Property Client [Scion] to obtain such credit reports, criminal histories, character reports, verification of rental and employment history as it deems necessary to verify all information in your application." *Id.* at 16. Plaintiffs authorize Entrata, acting "on behalf of the Property Client [Scion], to initiate transaction entries, including any convenience fees noted herein, to your transaction

1 account number (including checking and savings accounts) and/or charges to your credit
2 card." *Id.* Scion agrees to "make every effort to comply with all payment processing rules
3 and regulations." *Id.* at 16, 22. If Plaintiffs believe they have been charged in error, they
4 are to contact Scion or Entrata. *Id.* at 16. The Terms also advised Plaintiffs that they would
5 receive text messages from either Scion or Entrata. *Id.* at 23.

6 In short, the Terms make clear that Scion manages Plaintiffs' rental properties, can investigate Plaintiffs' applications, can assess fees, and can send text messages. Clearly, the Terms confer a benefit on Scion that is "separate and distinct" from the benefits conferred on Entrata and Plaintiffs. *SME Indus.*, 28 P.3d at 684; *see also Church v. Expedia Inc.*, No. C18-1812JLR, 2019 WL 2422577, at *4 (W.D. Wash. June 10, 2019) ("It is hard to imagine a more direct benefit under a contract than a provision providing for the payment of money."). The fact that Scion is identified as the "Property Client" rather than by name does not change this conclusion. *Id.* (holding defendant was a third-party beneficiary, notwithstanding that it was not "cited in the [a]greement by name") (citations omitted).

15 Plaintiffs rely on *Jewell v. HSN, Inc.*, 19-cv-247-jdp, 2019 WL 5802619, at *4 (W.D. Wis. Nov. 7, 2019), and contend that Scion is an incidental beneficiary because "the benefits that [Scion] contends it received from the Agreement . . . result directly from the benefits the Entrata Agreement conferred on Plaintiffs[.]" *Id.* at 13. The Court does not agree. *Jewell* made clear that the required benefits to the third party must be distinct from both "parties' benefits." *Id.* at *5. Unlike the terms and conditions in *Jewell*, which gave the third party no unique rights, the Terms allow Scion to investigate applicants, accept rental payments, impose fees, and initiate transactions. As the property manager, these benefits are unique to Scion and integral to managing the property.[2]

---

[2] Because Scion is a third-party beneficiary under the Terms, the Court need not address whether Scion can invoke the arbitration agreement through nonsignatory estoppel. Nonsignatories can enforce arbitration agreements as third-party beneficiaries. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001)).

**C.  Delegation.**

The Ninth Circuit has explained that "[g]enerally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. However, these gateway issues can be expressly delegated to the arbitrator where the parties clearly and unmistakably" so provide. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quotation marks and citations omitted).  Scion argues that by incorporating the AAA and U.S. Arbitration & Mediation ("USA&M") rules in the Terms, "the parties expressly delegated the power to determine the gateway issues of arbitrability to the arbitrator, meaning the arbitrator, not this Court, must resolve all remaining issues related to [its motion]."  Doc. 19 at 11.  Plaintiffs argue that reference to AAA and USA&M arbitration rules, standing alone, fails to delegate threshold issues of arbitrability.  Doc. 20 at 16, 18.[3]

The Court does not find clear and unmistakable evidence that the parties intended to delegate arbitrability issues to the arbitrator.  The Terms provide that arbitration shall be conducted in accordance with the rules of the USA&M or the AAA.  Doc. 19-2 at 21. Rule 7 of the AAA provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  AAA Commercial Arbitration Rule 7(a).  Numerous courts have held that incorporation of the AAA rules is clear and unambiguous evidence that the parties intend to delegate gateway issues of arbitrability to the arbitrator.  *See, e.g.*, *Brennan*, 796 F.3d at 1130.

But the USA&M rules are not clear and unambiguous on delegation.  Rule 5 states that "[t]he arbitrator has the authority to settle all points of controversy in the dispute[.]"

---

[3] The Terms state that "[a]ny controversy or claim arising out of or relating to the use of the services on this site, the relationship resulting from the use of such services, or a breach of any duties hereunder will be settled by Arbitration in accordance with the Commercial Arbitration Rules of the [USA&M] or the [AAA]."  Doc. 19-2 at 21.

7

USA&M Arbitration Rule 5(c). Rule 23 states that "[a]ny matter not specifically addressed by these Rules, or any conflict or ambiguity in these Rules, will be decided by the arbitration administrator, at his or her sole discretion." *Id.* Rule 23(a). These provisions may well be intended only to convey full authority to decide the merits of a particular case. They do not clearly and unambiguously refer to issues of arbitrability.

Some courts have found delegation when arbitration agreements incorporate more than one set of rules. *See, e.g.*, *Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 942 (E.D. Tenn. 2017); *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 335 (S.D.N.Y. 2013); *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12–cv–23324–KMM, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013). But in addition to AAA Rules, all of these cases incorporate either JAMS or NAF Rules, which contain substantially similar delegation provisions. The JAMS Rules provide:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS, Comprehensive Arbitration Rules & Procedures Rule 11(b). The NAF Rules are just as clear:

> An Arbitrator shall have the power to rule on all issues, Claims, Responses, questions of arbitrability, and objections regarding the existence, scope, and validity of the Arbitration Agreement including all objections relating to jurisdiction, unconscionability, contract law, and enforceability of the Arbitration Agreement. The Arbitrator may rule on objections to jurisdiction of the Arbitrator, FORUM, or to the arbitrability of a claim or counterclaim as a preliminary matter where appropriate.

Forum, Code of Procedure Rule 3.1(e).

None of these cases involved the ambiguous USA&M rules. And Scion cites no case holding that the USA&M rules delegate arbitrability to the arbitrator.

8

The Supreme Court has counseled that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019). Given the ambiguity of the USA&M rules, the Court cannot conclude that the parties clearly and unmistakably agreed to delegate the issue of arbitrability to the arbitrator. The Court accordingly must resolve the parties' arbitrability arguments on the merits.

### D.  Unconscionability.

Unconscionability is a generally applicable contract defense that may render an arbitration agreement unenforceable under the FAA, *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996), and it is determined according to the laws of the state of contract formation, *Chalk*, 560 F.3d at 1092.  Under Utah law, courts use a two-pronged analysis when determining whether a contract is unconscionable.  "The first prong—substantive unconscionability—focuses on the agreement's contents.  The second prong—procedural unconscionability—focuses on the formation of the agreement."  *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998).  The party challenging the enforceability of an arbitration clause bears the "heavy burden" of proving unconscionability, and courts make the determination "in light of the twofold purpose of the doctrine, prevention of oppression and unfair surprise."  *Id.* at 402; *Res. Mgmt. Co. v. Weston Ranch*, 706 P.2d 1028, 1041 (Utah 1985).

#### 1.  Substantive Unconscionability.

An agreement is substantively unconscionable if it is "so one-sided as to oppress or unfairly surprise an innocent party" or if "there exists an overall imbalance in the obligations and rights imposed by the bargain."  *Sosa v. Paulos*, 924 P.2d 357, 361 (Utah 1996) (citations omitted).  The Court finds two primary arguments in support of Plaintiffs' position on substantive unconscionability: (1) arbitration would leave them unable to effectively vindicate their rights, and (2) the Entrata agreement is illusory because it allows unilateral modification by Entrata.  Doc. 20 at 13, 21.

### a. Effective Vindication.

The effective vindication doctrine is a judge-made exception to the FAA. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013). It holds that an arbitration clause will be enforced only "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). If an arbitration provision "operate[s] . . . as a prospective waiver of a party's right to pursue statutory remedies," courts must not enforce the clause. *Id.* at 637 n.19. The Supreme Court has acknowledged that this exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Italian Colors*, 570 U.S. at 236; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights").

Plaintiffs contend that the Terms "prevent [them] from effectively vindicating their rights under the TCPA." Doc. 20 at 13-14. Plaintiffs highlight the fact that the Terms require them to waive their right to statutory damages and impose significant costs that would hinder their ability to vindicate TCPA claims. *Id.* at 19-20. In response, Scion argues that the effective vindication doctrine is "nearly dead" and, in any event, Scion offers to "pay the costs of arbitration in accordance with Consumer Rules." Docs. 21 at 11 n.9, 25 at 8. Scion cites, and the Court has found, no case stating that the effective vindication doctrine is dead.

Citing the AAA Commercial Rules of arbitration, Plaintiffs argue that the arbitration agreement requires them to "pay between all or half of all arbitration fees, and half of all mandatory mediation-related fees . . . [where] the [full] costs of arbitration are ultimately shifted to the unsuccessful party." Doc. 20 at 15. Plaintiffs also contend that arbitration that would take place in Utah, far away from their residences, preventing them from pursuing their TCPA claims. *Id.* at 20-21. In reply, Scion contends that "the arbitrator

would apply the [AAA] Consumer Rules, which dictate that arbitration will occur in Plaintiffs' forum residence and that Scion would pay the majority of the costs, which Scion would agree to do even if not required." Doc. 21 at 13.[4]

Plaintiffs' surreply notes that Scion offers no meaningful justification for why the AAA Consumer Rules, as opposed to the AAA Commercial Rules expressly incorporated into the arbitration agreement, would apply. Doc. 22-1 at 4. Scion responds that the arbitrator would "automatically apply [the Consumer Rules] to all applicable consumer agreements." Doc. 25 at 7. The Court agrees.

The AAA applies Consumer Rules when "the arbitration agreement is contained within a consumer agreement . . . that specifies a particular set of rules other than the Consumer Arbitration Rules." AAA Consumer Rules R-1(a)(4). The parties' agreement in this case clearly is a "consumer agreement" under the AAA rules. *See* AAA Consumer Rules at 9.[5] The AAA Commercial Rules further provide that "dispute[s] arising out of a consumer arbitration agreement will be administered under the AAA's Consumer Arbitration Rules." AAA Commercial Rules R-1; *see Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 961 (N.D. Cal. 2015) (noting that the arbitrator must apply the AAA Rules most appropriate to the dispute, regardless of what the agreement said). Given these provisions

---

[4] Although the Terms state that arbitration will be conducted in Salt Lake City, Utah (Doc. 19-2 at 21), Scion appears to concede that "arbitration will occur in Plaintiffs' forum residence" (Doc. 21 at 13). What is more, the AAA Consumer Rules make clear that "[i]f an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration . . . [which] will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the Consumer Due Process Protocol," which gives "due consideration of [parties'] ability to travel and other pertinent circumstances." AAA Consumer Rules R-11; AAA Consumer Due Process Protocol Principle 7. Given these provisions and Scion's avowed willingness to arbitrate here, the Court cannot conclude that the Terms' forum selection provision prevents Plaintiffs' from effectively vindicating their rights.

[5] "The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use" and includes residential leases. AAA Consumer Rules at 9.

and Scion's concessions, the Court concludes that the arbitration in this case will be held under the AAA Consumer Rules, notwithstanding the agreement's specification of the AAA Commercial Rules.

Further, the Court is not convinced that the filing and administrative fees will "make access to the forum impracticable." *Italian Colors*, 570 U.S. at 236.  The Consumer Rules would apply, and Scion has offered to "pay the costs of arbitration."  Doc. 25 at 8; *see Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016) ("[Defendant] has committed to paying the full costs of arbitration.  So long as [Defendant] abides by this commitment, the fee term in the arbitration agreement presents Plaintiffs with no obstacle to pursuing vindication of their federal statutory rights in arbitration.").

Plaintiffs also contend that the Terms prevent them from effectively vindicating their claims because they are required to waive their right to statutory damages.  Doc. 20 at 13-15, 20-21.  Plaintiffs are correct that the Terms broadly require waiver of damages for violations of the TCPA, the only claims in this action.  *See* Doc. 19-2 at 20.  The Terms further note that Entrata, and Scion as a third-party beneficiary, are not liable for statutory damages, and that damages are limited to a refund of money paid to Entrata.  *Id.*

Because the Terms limit damages and liability to "less than [Scion's] potential liability under common or statutory law" the contract is automatically "suspect." *Feacher v. Handley*, No. 2:13-cv-92-EJF, 2014 WL 119382, *4 (D. Utah Jan. 13, 2014).  The Terms are even more suspect considering that Plaintiffs are unsophisticated with little or no bargaining power.  As the Utah Supreme Court has counseled:

> In cases where the buyer is a consumer, there is a disparity in bargaining power, and the contractual limitations on remedies, including incidental and consequential damages, are contained in a preprinted document rather than one that has been negotiated between the parties . . . a trial court will generally find that provisions limiting incidental and consequential damages are unconscionable in consumer settings and conscionable in commercial settings.

*Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1113-14 (Utah 1991).

Because the Terms waiving TCPA liability and limiting remedies to a refund of amounts paid by Plaintiffs to Scion or Entrata "operate . . . as a prospective waiver of a party's right to pursue statutory remedies," the Court finds them unconscionable. *Mitsubishi Motors*, 473 U.S. 637 n.19; *see Italian Colors*, 570 U.S. at 236 (the effective vindication doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights"). As discussed below, the Court will sever these provisions from the Terms and refer the case to arbitration.

### b.  Illusory Terms.

Plaintiffs contend that because the agreement contains a modification clause that permits Entrata to change the Terms at any time, the agreement is illusory and thus unconscionable. Doc. 20 at 21-22. The Court does not agree, however, that the terms allow unilateral modification. Under a bolded header titled "Changes to the Agreement," the Terms warn users that "you are bound by the version of this Agreement that is in effect on the date of your visit. This Agreement may change from time to time, so please review it when you visit the Site." Doc. 19-2 at 11. There is no evidence that Entrata or Scion ever sought to modify the Terms.

Even though the Terms give Entrata the right to make changes, Plaintiffs are bound only by the version of the Terms they assented to whenever they last accessed the site – that is, whenever they checked the box indicating their agreement to the Terms. *Id.* at 3, 8. Thus, the modification clause does not permit Entrata or Scion to make any revisions to the Terms entirely on their own; Plaintiffs must indicate their assent before they are bound by any new provisions. *Id.* This Court, and others, have upheld similar contracts. *See Brittain v. Twitter Inc.*, No. CV-18-01714-PHX-DGC, 2019 WL 110967, at*2 (D. Ariz. Jan. 4, 2019) (citing *Williams v. TCF Nat'l Bank*, No. 12 C 05115, 2013 WL 708123, at *10 (N.D. Ill. Feb. 26, 2013)).

Plaintiffs' reliance on *Ingle v. Circuit City Stores, Inc.* 328 F.3d 1165, 1179 (9th Cir. 2003), and *Scudiero v. Radio One of Texas II*, 547 F. App'x 429, 432 (5th Cir. 2013), is misplaced. Both cases concern arbitration agreements in the unique context of

employment relationships. And unlike the conspicuously labeled dispute resolution section in the Terms, the arbitration clause in *Dialtone* was not clearly disclosed, could easily have been overlooked, and was never signed by either party. *Net Glob. Mktg., Inc. v. Dialtone, Inc.*, 217 F. App'x 598, 601 (9th Cir. 2017).

Plaintiffs have not shown that the modification clause is substantively unconscionable.

### 2. Procedural Unconscionability.

"Procedural unconscionability centers on the 'relative positions of the parties and the circumstances surrounding the execution of the contract,' and occurs 'where there is an absence of meaningful choice and where lack of education or sophistication results in no opportunity to understand the terms of the agreement.'" *Equitable Life & Cas. Ins. Co. v. Ross*, 849 P.2d 1187, 1190 (Utah Ct. App. 1993) (quoting *Jones v. Johnson*, 761 P.2d 37, 39 (Utah Ct. App. 1988)). Plaintiffs argue that the agreement is a contract of adhesion, presented on a "take-it-or-leave-it" basis. Doc. 20 at 19. But adhesion contracts are not per se unconscionable under Utah law. *See Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1292 (D. Utah 2017).

Plaintiffs also argue that the arbitration agreement surprised them when they filed this action. Docs. 20 at 19, 22-1 at 7. But the arbitration provision was not hidden within the Terms as Plaintiffs contend. Unlike the cases Plaintiffs cite, where nothing in the text of the agreements called attention to the dispute resolution provision, the arbitration clause in this case appears under a clearly labelled and bolded heading titled "Dispute Resolution." Doc. 19-2 at 20-21. The first sentence makes clear that "[a]ny controversy or claim arising out of or relating to the use of the services on this site, the relationship resulting from the use of such services, or a breach of any duties hereunder will be settled by Arbitration[.]" *Id.* at 21. This is not, as Plaintiffs contend, "buried" in a densely-spaced contract with no prominent font to differentiate it from the other terms of service. Doc. 20 at 19; *see Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1131 (D. Ariz. 2009) ("entirely reasonable" contract that lacked "fine print clauses" was not unconscionable).

Plaintiffs criticize Entrata's use of a "clickwrap" agreement which requires a consumer to click on an optional hyperlink to review the agreement. Doc. 20 at 19. But "[c]lickwrap agreements are increasingly common and have routinely been upheld." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012) (citation omitted); *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-03514 SC, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015) ("Because "[b]lanket assent to a form contract is still assent, albeit a more attenuated form than the assent that drives contract theory," courts generally find that clickwrap agreements are enforceable.") (citation omitted).

Nor can Plaintiffs prevail by asserting that they do not recall seeing the arbitration agreement. Docs. 20-2 ¶ 5, 20-3 ¶ 5. Under Utah law, "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense." *Mackley v. Openshaw*, 456 P.3d 742, 749 (Utah 2019) (citation omitted); *see also Morgan v. Glob. Payments Check Servs., Inc.*, No. 2:17-cv-01771-JAM-CMK, 2018 WL 934579, at *3 (E.D. Cal. Feb. 15, 2018) ("A plaintiff's failure to remember seeing the terms of an agreement is insufficient to dispute that the plaintiff agreed to those terms, and a party's failure to read a contract is not a defense to its enforcement.") (citations omitted).

Plaintiffs have not shown that the arbitration agreement is procedurally unconscionable.

**E.     Severance.**

Under Utah law, "contract provisions are severable if the parties intended severance at the time they entered into the contract and if the primary purpose of the contract could still be accomplished following severance." *Sosa*, 924 P.2d at 363 (citing *Mgmt. Servs. Corp. v. Dev. Assocs.*, 617 P.2d 406, 408 (Utah 1980)). Scion argues that the Court should sever any unconscionable terms it finds in the agreement. Doc. 21 at 13. Plaintiffs contend that severance is an improper remedy because there is no severance clause in the Terms and the Court would be required to conduct extensive "surgery" to remove

unconscionable provisions, which would not accomplish the primary purpose of the agreement. Doc. 22-1 at 9.

There is a clear severability clause in the Terms: "If any part of these Terms is determined to be invalid or unenforceable, then the invalid or unenforceable provisions will be deemed superseded by a valid, enforceable provision . . . and the remainder of the Agreement will continue in effect." Doc. 19-2 at 21. Plaintiff has not otherwise argued or presented authority that prohibits the Court from severing unconscionable terms and referring a case to arbitration.

As discussed above, the Court deems unconscionable the provisions waiving Entrata's and Scion's potential liability for statutory damages and limiting Plaintiffs' damages to a simple refund. *See Supra* Part IV(D)(1)(a). A party agreeing to arbitration does not waive any substantive statutory rights, but simply agrees to submit those rights to an arbitral forum. *See Mitsubishi Motors*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). Courts are required to enforce arbitration agreements according to their terms, even when federal statutory claims like Plaintiffs' are at issue, unless the FAA's mandate has been "overridden by a contrary congressional command." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). Plaintiffs do not contend that Congress has shielded TCPA claims from arbitration.

By severing the language which prohibits Plaintiffs from effectively vindicating their statutory rights, the Court ensures that the primary purpose of the Terms – facilitating the relationship and interaction between Scion and Plaintiffs – will still be accomplished. This conclusion comports with the strong federal policy encouraging the expeditious resolution of disputes through arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."); *Chandler v. Blue Cross Blue*

*Shield*, 833 P.2d 356, 358 (Utah 1992) ("this court has also recognized the strong public policy in favor of arbitration 'as an approved, practical, and inexpensive means of settling disputes and easing court congestion.'") (Citation omitted).

## V.     Conclusion.

The Court will sever the provisions of the Terms that purport to waive Plaintiffs' rights to damages under the TCPA. *See Supra* Part IV(D)(1)(a). As Scion has avowed, arbitration will be held under the AAA Consumer Rules, in Arizona, and Scion shall pay the arbitration fees. Plaintiffs have otherwise failed to show that the arbitration agreement is invalid or unconscionable.

**IT IS ORDERED:**

1. Plaintiffs' motion for leave to file a surreply (Doc. 22) is **granted**.
2. Defendant's motion for leave to file a response to Plaintiffs' surreply (Doc. 24) is **granted**.
3. Defendant's motion to dismiss and compel arbitration (Doc. 19) is **granted**. Any waiver of Plaintiffs' rights or damages under the TCPA is severed from the parties' agreement and unenforceable, arbitration will be held in Arizona under the AAA Consumer Rules, and Defendant shall pay the arbitration fees.
4. Because all claims are subject to arbitration, the Clerk is directed to **terminate** this action.

Dated this 16th day of April, 2020.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

17